## SURGAN v. PARKER.
### No. 5679.

Court of Appeal of Louisiana. Second Circuit.

April 1, 1938.

company him merely as a guest on the trip to Memphis, Tenn., where Parker intended to transact some business personal to himself; that he suddenly began to drive the car at an excessive rate of speed; that plaintiff warned him of the danger of doing so, and he then reduced the car's speed, but immediately thereafter, when on a straightaway, increased the speed to 60 miles per hour and began driving on the left-hand side of the road; that plaintiff again protested against this manner of operating the car, and that defendant thereupon attempted to resume his side of the road, but before his efforts succeeded, his car was struck by an automobile coming in the opposite direction. Summarizing, the petition declares that Parker's gross negligence consisted of the following acts, viz.:

"1. The excessive rate of speed at which L. E. Parker was driving.

"2. Suddenly and without warning, cutting over to the left hand side of the road; in driving along the left hand side of the road; in failing to keep a proper and careful lookout; failing to see the approach of the automobile in the opposite direction; in failing to heed the protests of the plaintiff."

Defendant excepted to the petition on the ground that it did not set forth a cause or right of action.

The following stipulation of counsel appears in the record:

"1. It is admitted by the parties hereto that the accident herein sued upon occurred in the State of Arkansas and that it occurred on a graveled highway;

"2. It is agreed by plaintiff that defendant may prove the law of the State of Arkansas by introducing a copy thereof under the certificate of the Secretary of State of the State of Arkansas, and that said certified copy attached hereto may be considered by the Court for all purposes in this suit."

In keeping with said stipulation, there was filed in evidence on trial of the exception, a copy of Act No. 179, page 481 of 1935, General Assembly of Arkansas, certified to by the Secretary of State of that state. Deleting those words and sentences unnecessary for intelligent consideration of the sole issue tendered by the exception, said act is as follows, to wit: "No person transported * * * by the * * * operator of a motor vehicle as a guest

M. T. Monsour, of Shreveport, for appellant.

Irion & Switzer and Henry F. Turner, all of Shreveport, for appellee.

TALIAFERRO, Judge.

A Packard automobile driven by L. E. Parker, in which plaintiff was riding as a guest, collided with another car near Bradley in the state of Arkansas, and plaintiff suffered serious physical injuries therefrom. Both parties were then and are now residents of the city of Shreveport, La.

Plaintiff sues Parker to recover damages. He alleges that the collision and resultant injuries to him were caused solely by the gross negligence of Parker. He further alleges that Parker "induced" him to ac-

* * * shall have a cause of action for damages against such * * * operator * * * for personal injury * * * unless such injury shall have been caused by the willful misconduct of such * * * operator." Section 1.

The issue raised by the exception and passed on by the lower court is: That under the laws of Arkansas, a guest injured by the collision or upset of the automobile in which he is riding has no cause of action against the car's operator to recover damages for personal injuries unless such injuries shall have been caused by the willful misconduct of such operator, and that the allegations of the petition do not disclose willful misconduct on defendant's part as the cause of the collision.

The lower court sustained the exception and dismissed the suit. Plaintiff prosecutes appeal.

Plaintiff's counsel refer to and discuss Act No. 61, page 138 of 1935, General Assembly of Arkansas, as having bearing upon the liability of car operators to guests injured while riding with them, and argue that this act is controlling in the case at bar. We are not sure from this discussion and the quoted portions of this act that there is any conflict between it and Act No. 179 adopted the same year, so far as concerns the present case. At all events, there is no proof in the record of the existence and contents of said Act No. 61; and we shall therefore pass upon the case as though Act No. 179 were the last expression of the legislative will of the state of Arkansas on the subject. Statutory laws of sister states must be proved as facts in a case. Judicial cognizance of such facts will not be taken. Succession of Marinoni, 177 La. 592, 148 So. 888; Taylor, Bank Com'r, v. Terzia, 171 La. 1040, 132 So. 781; Rush v. Landers, 107 La. 549, 32 So. 95, 57 L.R.A. 353.

Prior to the adoption of said Act No. 179, as regards the right of invited guests to recover damages from owners and/or operators of automobiles, the law of Arkansas was practically the same as prevails in most states of the Union, including Louisiana, which is that the operator of an automobile owes such a guest the duty of exercising reasonable care in the operation of the car, to the end that he may not be injured or unnecessarily exposed to danger or injury by increasing the hazard of travel. A simple reading of Act No. 179, page 481 of 1935, reveals that the Legislature intended a wide departure from the pre-existing law on the subject dealt with, and, in fact, abrogated it almost entirely. See Roberson v. Roberson, 193 Ark. 669, 101 S.W.2d 961, 962. Cases will rarely arise in which it can be shown to a court's satisfaction that collisions or upsets of automobiles, with resultant injury to guests, occur because of the "willful misconduct" of the operator. Those who operate automobiles should have (and when mentally normal, do have) a conscious desire to avert injury to themselves in such operation, at least coextensive with that not to injure their guests; and since to operate a car in a willfully negligent manner offers a threat to security from injury as great to the operator as it does to the guest, evidence to prove that grade of negligence should be unusually strong and convincing before the operator can and will be convicted of such.

Therefore, the issue before us turns upon the meaning of the term "willful misconduct," as employed in the Arkansas statute, and whether the allegations of the petition, anent defendant's negligence, as the cause of the accident, are sufficient in law to amount to willful misconduct. It will be observed that it is not charged that the accident occurred because of defendant's "willful misconduct," but because of his "gross negligence." Of course, such an allegation is but a legal conclusion. The facts alleged or proven determine the character of the negligence; and for the purpose of disposing of this exception, the allegations of the petition, supplemented by the copy of said Act No. 179, afford the basis.

Since the Arkansas statute is of recent adoption, the courts of that state, so far as we are aware or are informed, have not been called upon to define or interpret the term "willful misconduct," as employed in the act. It is said, however, in the Roberson Case, supra, that "driving * * * at a * * * dangerous rate of speed" is not actionable in Arkansas. We find no discussion or definition of the term in the jurisprudence of Louisiana. In Cole v. List & Weatherly Const. Co., 156 So. 88, 90, Judge Mills, of this court, discusses and defines the word "willful" as used in section 28 of the Workmen's Compensation Law, Act No. 20 of 1914. In passing, he said: "In many states compensation is denied where the injury results from willful misconduct of the workman. Under these

statutes 'willful' is construed to mean a premeditated, obstinate and intentional wrongdoing as distinguished from mere heedlessness or carelessness."

He cites several authorities which sustain what he there said. That definition may properly be applied to the word "willful" as used in the Arkansas act.

Webster's New International Dictionary contains this definition of the word: "Self-determined; voluntary; intentional; as willful murder. Governed by will without yielding to reason; obstinate; perverse; stubborn; as, a willful man or horse."

Webster also defines misconduct as wrong or improper conduct; bad behavior; unlawful behavior or conduct; malfeasance. Therefore, combining the two definitions, willful misconduct means wrong or improper or unlawful conduct motivated by a premeditated, obstinate, or intentional purpose, as contradistinguished from mere indifference, heedlessness, or carelessness. This definition gives to the words "their most usual significance," and meets the requirements of article 14 of the Revised Civil Code. Rester v. Moody & Stewart, 172 La. 510, 134 So. 690.

Decisions of other states are helpful and persuasive of the views we entertain on the question at issue.

In Lee v. Lott, 50 Ga.App. 39, 177 S.E. 92, 94, the terms wanton misconduct, gross negligence, and kindred terms are dealt with. The accident involved in that case occurred in South Carolina, where there is a statute similar to that in Arkansas, which places material restrictions upon the right of a guest passenger to recover damages against the operator of the car, when caused by the latter's fault. Georgia has no statute of the kind, but its courts have laid down the principle that "one riding by invitation and gratuitously in another's automobile can not recover for injury caused by the other's negligence in driving, unless it amounted to gross negligence." The facts of the Lee Case, supra, to a large extent are quite similar to those of the case at bar. We quote some of the syllabi of the case to disclose the facts involved, the construction placed on the law applicable thereto, and the court's conclusion, viz.:

"2. Under South Carolina guest statute, automobile guest cannot recover for injuries, unless act causing accident was intentional or accident was caused by heedless and reckless disregard of rights of others by owner or operator.

"3. 'Act or conduct in reckless disregard of rights of others,' authorizing recovery under South Carolina guest statute, is improper or wrongful conduct, and constitutes 'wanton misconduct' evincing reckless indifference to consequences, to life, limb, health, reputation, or property rights of another, and is more than gross negligence.

"4. Guest's petition based on injuries sustained in South Carolina relying solely on host's unlawful speed, failure to equip car with suitable steering apparatus, operation of car with knowledge of defective condition, and inattention while driving, held demurrable as not showing wanton misconduct."

The court does not specifically deal with the term "willful misconduct" as the cause of injury to the guest, but does hold that the facts of the case did not characterize the negligent acts of the operator as being "wanton misconduct." The terms "willful misconduct" and "wanton misconduct," in statutes of the sort here discussed, are virtually synonymous in meaning and effect.

In Shaw v. Moore, 104 Vt. 529, 162 A. 373, 374, 86 A.L.R. 1139, the court draws some very clear and rational distinctions between the terms "negligence," "gross negligence," and "willful wrong," etc. Touching these terms, it is said: "The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure."

It will be noted that the court says that both ordinary and gross negligence differ from "willful and intentional (mis) conduct, in degree of seriousness; the latter being of a greater gravity of wrong. The former two do not embrace willfulness or

deliberate intent or purpose, while the latter does.

■ In view of these expressions from adjudicated cases, and what we have said on this subject, it is well to advert to the allegations of plaintiff's petition in order to determine if same may be construed as denouncing defendant as having been guilty of "willful misconduct" in the operation of his car at and prior to moment of the collision.

Defendant is charged with driving too fast, cutting his car suddenly and without warning to his wrong side of the road and driving thereon; not maintaining a proper lookout, and in failing to heed plaintiff's protests. Proof of either or all of these allegations, some of which are legal conclusions, would not convict defendant of being guilty of willful misconduct. To be guilty of some of the charges would amount to ordinary negligence, while, as to others, his acts could be properly classed as being grossly negligent. These allegations do not disclose that defendant premeditatedly or designedly or intentionally committed the acts of negligence for the wrongful purpose of doing injury to plaintiff or himself. They rather indicate strongly that defendant's operation of the car was of the sort indulged in by most operators. On favorable stretches of gravel roads, speed is usually increased, and if by doing so better time can be made, the left side of the highway is used to attain that end, particularly when traffic conditions ahead warrant such action. Assuming that plaintiff did protest as alleged by him, he also alleges that in each instance defendant heeded the protests. The first time he succeeded in changing the course of the car, but had not completely succeeded in the second effort when the collision occurred.

We are of the opinion that the lower court correctly ruled on the exception, and its judgment is hereby affirmed.