83 So.2d 532 (1955)
Fate G. BURGE, Plaintiff-Appellee,
v.
ADMINISTRATOR, DIVISION OF EMPLOYMENT SECURITY OF THE DEPARTMENT OF LABOR of the State of Louisiana, Defendant-Appellant.
No. 8423.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1955.
*533 Lewis D. Dunbar, Baton Rouge, for appellant.
Campbell & Campbell, Minden, for appellee.
GLADNEY, Judge.
This action, authorized by the Louisiana Employment Security Law, LSA-R.S. 23:1471, was brought by Fate G. Burge for judicial review of an administrative ruling by the Board of Reviewan agency of the Division of Employment Securitywhich denied his claim for unemployment compensation. From an adverse judgment the Administrator of the Division of Employment Security has appealed. The principal issue presented herein is whether there is evidence to support the finding of the Board of Review that Burge was discharged for misconduct connected with his employment and was disqualified, therefore, for receiving statutory benefits to which he would otherwise be entitled.
Any judicial review of the findings of the Board of Review of the facts presented to it upon a claim for unemployment compensation is restricted by legislative mandate, for it is provided in part by LSA-R.S. 23:1634:
"* * * In any proceeding under this Section the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court, but the court may order additional evidence to be taken before the board of review, and the board of review may, after hearing such additional evidence, modify its findings of fact or conclusions, and file such additional or modified findings and conclusions, together with a transcript of the additional record, with the court. Such proceedings shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under the workmen's compensation law of this state. An appeal may be taken from the decision of the district court to the circuit court of appeals in the same manner, but not inconsistent with the provisions of this Chapter, as is provided in civil cases. * * *"
Since fraud is not an issue herein, we are only concerned with the question of whether the findings of fact by the Board of Review are supported by evidence, which we take to mean legal, competent and sufficient proof. The law is plain in that since the court may not hear testimony on the review, if it is not satisfied with the sufficiency of the evidence that has been made up for the record it has authority only to remand the case to the Board of Review for the purpose of taking additional evidence. Richardson v. Administrator, Division of Employment Security, Department of Labor, La.App.1946, 28 So.2d 88-90.
The disqualification of appellee resulted from an opinion of the Chief Referee which was unanimously affirmed by the Board of Review. It reads:
"The claimant testified that he was employed two and one-half years with his last employer and at the time of his separation, he was a railroad conductor and his rate of pay was $1.82 an hour. The train was to do some switching, and he was flagging on the front end of the train. There were two cars between he (sic) and the engineer. As soon as he saw the flag, he gave the signal to the engineer to stop. However, due to a bend in the siding, the engineer could not see the signal in *534 time and did not bring the train to a halt until it had bumped the car on the side. He testified that he did not see the signal in time to give the stop signal to the engineer.
"The employer testified that the claimant was well aware of the rules and regulations of the railroad. He grossly violated the safety rules and regulations by permitting the train to switch through a blue flag. The sign or signal was of such size that it was visible a considerable distance. As a matter of fact, it can be seen before entering the switch onto the side track. The claimant was the conductor and in complete charge of the train. It was his duty and responsibility to see that the train was properly operated to avoid damage to other individuals or property. Through his neglect, the proper signal was not given and as a result, his train was permitted to switch through a blue flag, subjecting both personnel and property to serious injury and damage.
"Opinion: The Louisiana Employment Security Act provides that an individual shall be ineligible for benefits, if it is determined that he was discharged for misconduct connected with work, and the disqualification will continue until he has earned wages equal to at least ten times the weekly benefit amount.
"The term `misconduct' has been defined as follows:
"`Willful and wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employees, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show intentional and substantial disregard of the employer's interests, or of the employee's duties and obligations to his employer.'
"It is evident that the claimant neglected certain safety rules and regulations in the performance of his duty; therefore, the employer was justified in dismissing him. It is considered misconduct connected with the work within the meaning of the Act.
"It Is Hereby Ordered: That the determination of the Agency be reversed, and claimant be disqualified for being discharged for misconduct connected with the work."
A section of the Louisiana Security Law, LSA-R.S. 23:1601, pertinently reads:
"An individual shall be disqualified for benefits:

* * * * * *
"(2) If the administrator finds that he has been discharged for misconduct connected with his employment. Such disqualification shall continue until such time as the claimant (a) can demonstrate that he has been paid wages for work equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying act occurred and (b) has not left his last work under disqualifying circumstances."
As emphasized above, this court is bound by the findings of fact by the Administrator, if supported by any evidence. Therefore, the following affirmative findings are conclusive: the existence of the rule prohibiting switching through a blue flag, Burge's responsibility for the movement of the train, and violation of the rule. The record contains evidence sufficient, in our opinion, for the resolution by the Board of Review of the salient factual points above enumerated.
The position of appellee is that the most that can be said of plaintiff's action in allowing the train to cross the blue flag would be to say that plaintiff was guilty of "inefficiency and failure to satisfactorily perform his duties." The contention, therefore, is that the violation of the rule falls *535 short of constituting misconduct as contemplated by the statute.
Do the facts as so determined amount to misconduct within the intent of the statute which does not define misconduct a word of general usage? The Louisiana Employment Security Act falls within the class of social and economic legislation that should be so interpreted by the courts as to extend its benefits as far as possible, but as limited by expressed legislative restrictions. This court in Surgan v. Parker, La. App.1938, 181 So. 86-89, while considering the effect of "willful misconduct" as used in an Arkansas guest statute, observed:
"Webster's New International Dictionary contains this definition of the word: `Self-determined; voluntary; intentional; as willful murder. Governed by will without yielding to reason; obstinate; perverse; stubborn; as, a willful man or horse.'
"Webster also defines misconduct as wrong or improper conduct; bad behavior; unlawful behavior or conduct; malfeasance. Therefore, combining the two definitions, willful misconduct means wrong or improper or unlawful conduct motivated by a premeditated, obstinate, or intentional purpose, as contradistinguished from mere indifference, heedlessness, or carelessness. This definition gives to the words `their most usual significance,' and meets the requirements of article 14 of the Revised Civil Code. Rester v. Moody & Stewart, 172 La. 510, 134 So. 690."
We are mindful that Section 1601 does not qualify the word "misconduct" with "willful" or other adjectives denoting relative degrees of culpability, but where used in similar unemployment compensation acts and judicially interpreted "misconduct" has been distinguished from mere heedlessness or carelessness. In 81 C.J.S., Social Security and Public Welfare § 163, p. 247, this general rule is recognized:
"An employee's deliberate violation of a reasonable rule in connection with his work is sufficient to constitute willful misconduct which will result in a loss of unemployment benefits where he is discharged for such violation."
Bigelow Co. v. Waselik, 133 Conn. 304, 50 A.2d 769; Arthur Winer, Inc., v. Review Board of Ind. Employment Sec. Division, 120 Ind.App. 638, 95 N.E.2d 214; Massengale v. Review Board of Ind. Employment Sec. Division, 120 Ind.App. 604, 94 N.E.2d 673; Merkle v. Review Board of Ind. Employment Sec. Division, 120 Ind.App. 108, 90 N.E.2d 524; Detterer v. Unemployment Compensation Board of Review, 168 Pa. Super. 291, 77 A.2d 886.
Manifestly, a single dereliction or even casual acts of negligence may be resolved as not misconduct as penalized by the statute. This being true, can we properly hold that a single violation of a company rule, as in this instance, shall be sufficient to disqualify for unemployment compensation benefits? Most assuredly all important circumstances related to the incident should be considered, and it should be pertinent to ascertain if an employer can afford to condone a single deliberate violation of a safety rule upon which the safety of personnel and security or property depends. Remington-Rand, Inc. is an ordnance plant in the operation of which high explosives are handled, and the lives of employee personnel depend upon strict observance of safety rules. A single violation, we surmise, can have grave consequences. An employee who knowingly violates a safety rule upon the observance of which depends the lives of fellow workers is guilty of willful misconduct and his discharge by the employer is justifiable. Think what might have happened if a train ignoring a blue flag bumped a car being loaded with explosives, thereby causing an explosion. Or let us suppose an employee violates a rule prohibiting smoking when dangerous fumes or gases are present. Should such action be condoned as simple carelessness? We think not.
The findings of fact by the Board of Review are supported by substantial evidence, and in our opinion, such facts were properly *536 held to constitute misconduct within the purview of LSA-R.S. 23:1601. It follows from our reasoning as hereinabove set forth, that the judgment from which appealed should be and is hereby reversed and set aside, and the ruling of the Board of Review denying the claim of appellee for unemployment benefits should be and is hereby reinstated and affirmed in all respects, plaintiff to pay all costs of this suit.